**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEZLIE SAVIOUR,** | **CIVIL ACTION** |
|                  **Plaintiff,** | |
|     **v.** | |
| **S. WILLIAM STAVROPOULOS, M.D.,** | **NO.  15-5362** |
| **C.R. BARD, INC., and** | |
| **BARD PERIPHERAL VASCULAR, INC., a** | |
| **subsidiary and/or division of defendant C.R.** | |
| **Bard, Inc.,** | |
|                  **Defendants.** | |

**DuBois, J.**                                                                               **November 5, 2015**

**M E M O R A N D U M**

## I.      INTRODUCTION

This is a product liability and medical malpractice action arising from the use of an allegedly defective medical device called an inferior vena cava ("IVC") filter. In the Complaint filed in the Court of Common Pleas of Philadelphia County and removed to this Court, plaintiff Lezlie Saviour asserts claims against C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (the "Bard Defendants") for manufacturing and distributing allegedly defective devices. Plaintiff avers that the Bard Defendants failed to adequately investigate and warn patients about the risks and failure rate of the IVC filters. Saviour also asserts claims against S. William Stavropoulos, M.D., who performed the operation in which the filter was implanted. Plaintiff avers that Stavropoulos committed medical malpractice by failing to disclose all risks associated with the procedure, negligently implanting the IVC filter, and failing to implement a follow-up plan to monitor the filter.

Presently before the Court is the Bard Defendants' Motion to Sever and Remand Claims Against S. William Stavropoulos, M.D. ("Motion to Sever"), and plaintiff's Motion to Remand.

The parties acknowledge that subject matter jurisdiction is absent on the face of the Complaint because there is no federal question presented, and there is no diversity of citizenship between Saviour and Stavropoulos who are both Pennsylvania domiciliaries. Nonetheless, defendants ask the Court to preserve federal jurisdiction by severing and remanding the claims against the non-diverse defendant, Stavropoulos. Doing so would allow the remaining claims against the Bard Defendants to be transferred to a multi-district litigation ("MDL") centralized in the District of Arizona. *See In re Bard IVC Filters Products Liability Litigation*, No. 15-md-02641 (D. Ariz.). In plaintiff's Motion to Remand she asks the Court to remand the case to state court for lack of subject matter jurisdiction. For the reasons set forth below, defendants' Motion to Sever is denied and the case is remanded to the Court of Common Pleas of Philadelphia County. Plaintiff's Motion to Remand is denied as moot.

## II.      BACKGROUND

### A. Facts

The facts as set forth in plaintiff's Complaint are as follows.

1. *The parties.* Plaintiff Lezlie Saviour resides in and is a citizen of the State of Pennsylvania. Compl. ¶ 1. Defendant S. William Stavropoulos, M.D. is a physician residing in Pennsylvania who specializes in Interventional Radiology. Compl. ¶ 2. Defendant C.R. Bard, Inc. is a corporation organized under the laws of Delaware with its principal place of business in New Jersey. Compl. ¶ 3. Defendant Bard Peripheral Vascular, Inc. is a wholly owned subsidiary corporation of C.R. Bard, Inc. with its principal place of business in Arizona. Compl. ¶ 4.

2. *Inferior vena cava filters*. The inferior vena cava is a vein that returns blood from the lower body to the heart. Compl. ¶ 16. Certain people develop blood clots, or thrombi, that travel from the lower body up into the lungs where they can cause pulmonary embolism. *Id.* Pulmonary

embolism can result in death. *Id.* The purpose of an IVC filter is to catch thrombi before they are able to reach the heart and lungs. Compl. ¶ 15. IVC filters can be implanted either permanently or temporarily in the human body, Compl. ¶ 14, but over time the medical community and IVC filter manufacturers began to favor the development of devices designed to be retrievable after a finite period of time. Compl. ¶¶ 20–21.

3. *The G2 filter.* The Bard Defendants designed and manufactured an IVC filter called the G2 Filter. Compl. ¶ 34. On August 29, 2005, the FDA approved the G2 Filter for permanent implantation. Compl. ¶ 35. The FDA approved the G2 Filter for optional retrieval on January 15, 2008. Compl. ¶ 36.

Plaintiff alleges that the Bard Defendants knew or should have known that the G2 Filter was defective. Specifically, plaintiff alleges the G2 Filter's failure rate is significantly higher than the rate published by the Bard Defendants, who consciously disregarded this risk and continued to actively market and sell the G2 Filter without adequate warnings. Compl. ¶¶ 47–52.

4. *Medical care at issue.* Prior to October 21, 2008, plaintiff Lezlie Saviour received a consultation from defendant Stavropoulos regarding her history of thromboembolic events, and because her pregnancy increased her risk of suffering another such event. Compl. ¶ 99. Stavropoulos recommended implanting the G2 filter. On October 21, 2008, Stavropoulos implanted the G2 filter via a right jugular femoral approach at the Hospital of the University of Pennsylvania ("HUP"). Compl. ¶ 103.

Plaintiff alleges that Stavropoulos failed to fully and properly disclose to plaintiff all of the risks associated with the G2 Filter, the alternatives to implanting an IVC filter, or any alternative IVC filter other than the G2. Compl. ¶ 100. As a result, plaintiff claims she did not

give informed consent to the procedure. *Id.* Plaintiff also alleges that Stavropoulos failed to implement a follow-up plan to monitor, assess, or remove the G2 filter. Compl. ¶¶ 104–106.

5. *The injury*. On or around October 2014, plaintiff experienced shortness of breath, and pelvic and abdominal pain. Compl. ¶ 107. She sought emergency treatment at HUP, and imaging studies revealed that the tip of the filter was embedded in plaintiff's inferior vena cava and the device had fractured into as many as six pieces. *Id.* "[O]ne fragment of the fractured G2 Filter migrated outside of Plaintiff's inferior vena cava, another fragment was floating freely in plaintiff's peritoneum, another fragment migrated and penetrated Plaintiff's right renal vein, and another fragment penetrated her right pulmonary artery." *Id.*

Plaintiff underwent emergency medical treatment, including surgical intervention, in an attempt to retrieve the fractured filter. As a result she claims she has "incurred significant medical expenses and has endured extreme pain and suffering, mental anguish, loss of enjoyment of life, and other losses, some of which are permanent in nature." Compl. ¶ 109. In addition, two fragments of the G2 Filter remain in plaintiff's body necessitating regular physicians' visits to monitor the fragments. Compl. ¶ 111.

### B.  Procedural History

Plaintiff filed this action on August 21, 2015 in the Court of Common Pleas of Philadelphia County. The Bard Defendants filed a Notice of Removal on September 29, 2015 (Document No. 1). The Bard Defendants then filed the instant Motion to Sever and Remand Claims Against S. William Stavropoulos, M.D. on September 30, 2015 (Document No. 3). Plaintiff Saviour filed her Response in Opposition to Bard's Motion to Sever and Remand Claims Against S. William Stavropoulos, M.D. on October 14, 2015 (Document No. 9). Defendant S. William Stavropoulos filed a notice of consent to the removal on October 14, 2015

(Document No. 8). Stavropoulos then filed Notice of Joinder to C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion to Sever and Remand Claims Against S. William Stavropoulos, M.D. (Document No. 11). On October 28, 2015, plaintiff filed a Motion to Remand (Document 12) and refiled her Response in Opposition to Bard's Motion to Sever and Remand Claims Against S. William Stavropoulos, M.D. (Document No. 13).

## III.   DISCUSSION

There is no diversity of citizenship in this case because plaintiff and defendant Stavropoulos are both Pennsylvania domiciliaries. *See* 28 U.S.C. § 1332. However, defendants ask the Court to preserve subject matter jurisdiction by severing and remanding the claims against Stavropoulos. Specifically, defendants argue that the Court should exercise its discretion to sever dispensable parties under Federal Rule of Civil Procedure 21. In response, plaintiff asks the Court to remand the entire action to state court because: (1) the removal was procedurally improper, and (2) severing the claims against Stavropoulos would prejudice plaintiff.

The Court agrees with defendants that the removal was procedurally proper. However, the Court declines to exercise its authority to sever Stavropoulos under Rule 21. In the interest of completeness, the Court also considers and rejects an argument raised in defendants' Notice of Removal—that Stavropoulos was fraudulently misjoined. The Court thus lacks subject matter jurisdiction and remands the case to the Court of Common Pleas of Philadelphia County.

### A.  Removal Procedure

Plaintiff argues that the case should be remanded to state court without the need to consider the merits of defendants' Motion to Sever because Stavropoulos did not timely file his written consent to remove the case. Based on the record before it, the Court disagrees.

Pursuant to 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." There must be "written indication from each defendant, or some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." *McGuire v. Safeware, Inc.*, No. 13-cv-3746, 2013 WL 5272767, at *3 (E.D. Pa. Sept. 17, 2013) (quoting *Ogletree v. Barnes*, 851 F. Supp. 184, 188 (E.D. Pa. 1994)). "[M]ost courts require all defendants to voice their consent *directly to the court.*" *Michaels v. State of N.J.*, 955 F. Supp. 315, 320 (D.N.J. 1996) (emphasis in original). Moreover, each defendant must consent within "30 days after receipt by or service on that defendant of the initial pleading or summons . . . ." 28 U.S.C. § 1446(b)(2)(B). "[C]ourts are without authority to expand this time period." *McGuire*, 2013 WL 5272767, at *3.

Plaintiff avers that Stavropoulos was properly served with the Complaint in state court on August 26, 2015, and did not file his written consent of removal until October 14, 2015 (Document 8), thereby exceeding the 30-day deadline. Pl.'s Resp. at 3.

According to the Bard Defendants' Notice of Removal, "C. R. Bard, Inc. was served on September 1, 2015; and Bard Peripheral Vascular[, Inc.] was served on September 29." NOR ¶ 19, at 7. Plaintiff does not dispute those dates. The date of service on the last-served defendant is critical because "the last-served defendant may remove within thirty (30) days of service, and other defendants may consent to the later-served Defendant's removal even if their own removal periods have expired." *Di Loreto v. Costigan*, 351 F. App'x 747, 752 (3d Cir. 2009) (quoting *Cmiech v. Electrolux Home Prods., Inc.*, 520 F. Supp. 2d 671, 676 (M.D. Pa. 2007)); *see* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant

files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

In this case, the last-served defendant, Bard Peripheral Vascular, Inc., timely removed the case to federal court. Stavropoulos is an earlier-served defendant who consented to removal within the appropriate 30-day period triggered by service on Bard Peripheral Vascular, Inc. Accordingly, the Court declines to remand the case on procedural timeliness grounds, and proceeds to address the merits of defendants' Motion.

### B. Severance Pursuant to Rule 21

The Bard Defendants argue that Federal Rule of Civil Procedure 21 empowers the Court to sever claims against dispensable parties for the purpose of preserving diversity jurisdiction. Defendants aver that the Court should exercise this authority in order to "advance the convenience and efficiency of the case, eliminate duplicative discovery, prevent inconsistent pre-trial rulings, and conserve the resources of the judiciary, the parties, and their counsel." Defs.' Mot. ¶ 6, at 2. The Court rejects this argument.

Rule 21, entitled "Misjoinder and Nonjoinder of Parties," provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The Supreme Court and the Court of Appeals for the Third Circuit have both held that a federal court may, pursuant to Rule 21, sever non-diverse, dispensable parties to retain diversity jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–38 (1989); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222–23 (3d Cir. 1999), *rev'd on other grounds* 545 U.S. 546 (2005). The Supreme Court cautioned, however, that "such authority should be exercised sparingly." *Newman-Green*, 490 U.S. at 837. The Court "should

carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Id.*

In sum, the analysis for severing a party pursuant to Rule 21 in order to preserve diversity jurisdiction proceeds in two steps: (1) the party to be severed must be dispensable; and if so, (2) the Court must assess whether severing would prejudice any of the parties in the litigation.

The Bard Defendants argue that Stavropoulos is a dispensable party, and that plaintiff would not be prejudiced by the severance. "[A]lthough the plaintiff would be required to pursue two separate actions, her separate pursuits would be cheaper and more efficient than a single action against Bard and Dr. Stavropoulos." Defs.' Mot. at 7. Plaintiff would also benefit from shared discovery in the MDL. *Id.* at 4. The Court rejects these arguments, although it notes that a number of courts have ruled otherwise.[1] This Court disagrees with those cases, and concludes that severing Stavropoulos would cause prejudice to plaintiff that would outweigh the benefits of litigating in the MDL.

On the first prong of the test, the Court agrees with defendants that Stavropoulos is a dispensable party.[2] But on the second prong, severance "will prejudice plaintiff, who will be required to litigate in two different fora." *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 530 (E.D. Pa. 2011) (DuBois, J.). Specifically, plaintiff would have to litigate her claims against

---

[1] *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, No. 15-cv-1188, 2015 WL 4614467, at *5 (D. Md. July 30, 2015); *Cooke-Bates v. Bayer Corp.*, No. 10-cv-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009), *as amended* (May 27, 2009).

[2] A party cannot be severed pursuant to Rule 21 unless that party is dispensable based on the factors listed in Federal Rule of Civil Procedure 19(b). *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421 (3d Cir. 2010). Indispensable parties are "[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 421 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir. 1987)). Based on the factors in Rule 19(b), the Court concludes that Stavropoulos is dispensable because, if severed, a court could accord relief to plaintiff in Stavropoulos's absence "[]consistent with equity and good conscience." *Id.*

Stavropoulos in Pennsylvania state court while simultaneously litigating her claims against the Bard Defendants in the MDL centralized in the District of Arizona.

A number of courts have declined to sever non-diverse parties under circumstances similar to those presented in this case, even where the remaining claims could have been transferred to an MDL. *See, e.g.*, *Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Robinson v. Swedish Health Servs.*, 10-cv-0113, 2010 WL 816818, at *2 (W.D. Wash. Mar. 5, 2010); *Ash v. Providence Hosp.*, No. 08-cv-0525, 2009 WL 424586, at *9 n.19 (S.D. Ala. Feb. 17, 2009); *see also Rost v. Pfizer Inc.*, 502 F. App'x 51, 53 (2d Cir. 2012) (holding that the district court did not abuse its discretion by denying a motion to sever a non-diverse defendant in order to avoid litigating "one [case] in federal court against the diverse defendants and one [case] in state court"). This Court agrees with these cases.

Second, plaintiff would be prejudiced by being forced to litigate in an undesired forum. The Court is "mindful of the deference to be afforded plaintiff's choice of forum." *Slater*, 771 F. Supp. 2d at 530. "[A] plaintiff's choice of forum should rarely be disturbed." *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)); *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("[T]he plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue." (quoting 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], at 107–67 (3d ed. 2005))).

The Supreme Court in *Newman-Green* cautioned that the authority to sever a non-diverse party "should be exercised sparingly"—where "the practicalities weigh heavily in favor of" preserving jurisdiction. 490 U.S. at 837. Defendants have not demonstrated that the practical benefits of litigating in the MDL outweigh the prejudice to plaintiff.

In *Newman-Green*, lack of diversity was discovered "after years of litigation." 490 U.S. at 836. The Supreme Court held that the non-diverse party could be severed from the case because a dismissal would require the parties to "jump through . . . judicial hoops merely for the sake of hypertechnical jurisdictional purity," culminating in a "preordained judgment." *Id.* at 837. The Court of Appeals for the Third Circuit has used Rule 21 to preserve diversity jurisdiction on similar facts. In *Zambelli Fireworks Mfg. Co. v. Wood*, plaintiff filed an action on March 26, 2008. 592 F.3d 412, 417 (3d Cir. 2010). On appeal, the Third Circuit noted that subject matter jurisdiction was absent. *Id.* at 420. On January 15, 2010, over a year after the action was filed, the Third Circuit severed the non-diverse party because "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage." *Id.* at 420–21.

Measured against the facts of *Newman-Green* and *Zambelli Fireworks*, the instant case does not implicate any such issues. The Court is asked to exercise its discretion under Rule 21 at the very outset of the case, before the parties have invested significant time and resources in the litigation. In contrast to *Newman-Green*, remanding this case would not "impose unnecessary and wasteful burdens on the parties[.]" 490 U.S. at 836.

In addition, removing defendants "carr[y] a heavy burden" of showing that the case is properly before the district court. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Severing a non-diverse party at this stage of the litigation would be inconsistent with that burden. "[W]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in New York,*

*Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)). Severing Stavropoulos upon the removal of the case "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Id.* "[M]any defendants would likely attempt to seek this post-removal action by the courts in order to avoid meeting the burdens associated with fraudulent joinder. Such a broad right would be inconsistent with the strict construction of the removal statute and the presumption in favor of remand." *Phillips v. R.R. Dawson Bridge Co., LLC*, No. 14-cv-00480, 2014 WL 3970176, at *5 (N.D. Ala. Aug. 12, 2014).

Finally, Federal Rule of Civil Procedure 82 provides that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the [district courts]." Fed. R. Civ. P. 82. Some courts have found that employing Rule 21 to sever non-diverse parties, particularly where the case was originally and properly filed in state court, violates Rule 82. *See Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003) ("[A] district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed.*" (emphasis in original)); *Nolan v. Olean Gen. Hosp.*, No. 13-cv-333-A, 2013 WL 3475475, at *7 (W.D.N.Y. July 10, 2013). The Court agrees with these cases.

Accordingly, the Court concludes that the Bard Defendants' interest in a consolidated federal forum is not significant enough for the Court to create federal jurisdiction by severing a non-diverse party—a practice that the Supreme Court cautioned "should be exercised sparingly." *Newman-Green*, 490 U.S. at 837.

### C. Fraudulent Misjoinder

In the interest of completeness, the Court will address an argument raised in the Notice of Removal but not in the Motion to Sever—fraudulent misjoinder. Specifically, defendants argue that the claims against Stavropoulos "have no real connection" with the claims against the Bard Defendants because "the issues concerning the design, manufacture, and labeling of the G2 Filter have nothing to do with Dr. Stavropoulos' alleged interactions with, and medical treatment regarding, the plaintiff." NOR ¶ 13, at 5. The Court rejects this argument.

The doctrine of fraudulent misjoinder[3] "refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule." *Reuter v. Medtronics, Inc.*, No. 10-cv-3019, 2010 WL 4628439, at *3 (D.N.J. Nov. 5, 2010) *report and recommendation adopted*, No. 10-cv-3019, 2010 WL 4902662 (D.N.J. Nov. 23, 2010). The fraudulent-misjoinder doctrine was first articulated by the Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, 204 F.3d 1069 (11th Cir. 2000). Fraudulent misjoinder occurs when (1) a defendant has "no real connection" to the action in violation of the applicable permissive joinder rules, and (2) the violation is "so egregious as to constitute fraudulent joinder." *Id.* at 1360.

The Court notes that the Court of Appeals for the Third Circuit has not recognized the fraudulent-misjoinder doctrine. The district courts in this circuit are divided on whether to adopt the rule. This Court need not decide that question. Assuming, *arguendo*, that the doctrine is applicable to this case, the Court concludes that there has not been any fraudulent misjoinder.

---

[3] Fraudulent *mis*joinder is distinct from the doctrine of fraudulent joinder. "While traditional fraudulent joinder probes the genuineness of a claim, fraudulent misjoinder tests the procedural basis of a party's joinder." *Reuter v. Medtronics, Inc.*, No. 10-cv-3019, 2010 WL 4628439, at *3 (D.N.J. Nov. 5, 2010) *report and recommendation adopted*, No. 10-cv-3019, 2010 WL 4902662 (D.N.J. Nov. 23, 2010); *see* 14B Charles Alan Wright et al., Federal Practice and Procedure § 3723 (4th ed. 2009).

Plaintiff alleges that her injuries were caused by the doctor, the device itself, or a combination of both. *See Reuter*, 2010 WL 4628439, at *5. "To the extent each Defendant tries to shift liability, the design and manufacture of the product and [the doctor's] conduct will be central issues." *Id.* The claims against Stavropoulos and the Bard therefore arise out of the same "transaction or occurrence," and are likely to involve "common question[s] of . . . fact . . . ." *See* Fed. R. Civ. P. 20; Pa.R.C.P. 2229(b); *Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 369 (E.D. Pa. 2002) (joining a medical malpractice claim against the treating physicians with an action against a medical device manufacturer); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (holding that, in a lawsuit against a medical device manufacturer, the doctors who performed the implant surgery "were merely permissive parties," not necessary parties).

The Court concludes that Stavropoulos was not joined in an "egregious" violation, or any violation, of the applicable joinder rules. Accordingly, defendant Stavropoulos was not fraudulently misjoined.

## IV.    CONCLUSION

The Court declines to exercise its authority pursuant to Rule 21 to sever Stavropoulos, who was properly joined in the case. Accordingly, there is no complete diversity of citizenship in the case before the Court; both plaintiff and Stavropoulos are Pennsylvania domiciliaries. Removal is therefore improper under 28 U.S.C. § 1441(a). The Court remands the case to the Court of Common Pleas of Philadelphia County for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

An appropriate order follows.